# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. AR-RAAFI NICHOLS, | ) ) ) | |
| Petitioner, | ) ) ) | |
| | ) | No. 11 C 2059 |
| v. | ) ) | Judge George W. Lindberg |
| MARCUS HARDY, Warden, Stateville Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is petitioner Ar-Raafi Nichols' petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court denies the habeas petition and declines to certify any issues for appeal.

**I.**     *Factual Background*

The following facts are taken from the September 6, 2006 decision of the Illinois Appellate Court, on petitioner's direct appeal. *See* 28 U.S.C. § 2254(e)(1) (stating that the state court's factual findings are presumed to be correct unless they are rebutted by clear and convincing evidence).

Petitioner was convicted of the murder of Victor Manriquez. At trial, Sarina Leighty testified that at the time of the murder, she had been dating petitioner off and on for approximately three years. On July 23, 2001, petitioner and Leighty got into an argument. Following this argument, Leighty spent the day drinking beer with Manriquez and having sex with him at a motel. Leighty testified that petitioner had seen Manriquez pick her up earlier in the

day. At some point during the day, Leighty left the motel, saw petitioner, and asked him to return to the motel with her. When he refused, Leighty returned to the motel and resumed drinking beer and smoking marijuana with Manriquez.

Leighty testified that later that evening, she and Manriquez left the motel, with Manriquez driving. Leighty heard petitioner call her name, and so she asked Manriquez to stop the car. Leighty got out of the car and began to walk back toward the motel in the hope that petitioner would follow her. However, petitioner walked past her to Manriquez's car. Petitioner said "drop down," meaning "give me your money," and Manriquez raised his hands in the air. Petitioner then shot Manriquez twice.

After the shooing, Leighty returned to the motel. She did not contact the police about the shooting. She was picked up by the police on August 4, 2001. She initially told the police that she had only heard gunshots, and that she had not witnessed the shooting.

Sherman James, who lived in the neighborhood, testified that at approximately 10:00 p.m. on July 23, 2001, he left his home and saw a car parked on the corner. He saw a woman standing near the driver's side talking to a man outside of the car. The man outside of the car told the driver to "give it up," and then the woman said she "got it under control." The man then approached the car, reached into the driver's side, and shot the driver twice. The shooter ran away.

James testified that he called the police, and that when the officers arrived, he described the shooter as a black male between five feet, six inches tall and six feet tall, wearing jeans and a football jersey. However, the parties stipulated that a detective would testify that James actually described the shooter as wearing a blue t-shirt and jogging pants. James testified that the shooter's hair was in dreadlocks on the night of the shooting. James recognized the woman as

2

someone he had seen in the neighborhood. James identified Leighty as the woman and petitioner as the shooter, in photographic arrays on August 2, 2001, and in lineups on August 4, 2001.

Petitioner's sister testified that in July 2001, petitioner's hair style was "short, tapered in the back and lined in the front."

Two .32 caliber bullets that had been fired were found at the scene. An assistant medical examiner testified that Manriquez had been shot twice at very close range, and that the gunshot wounds caused his death.

## II. *Procedural Background*

A jury found petitioner guilty of first degree murder, and not guilty of armed robbery. The trial court sentenced petitioner to an enhanced 50-year prison term: 25 years for the murder, and 25 years for personally discharging a firearm to cause the murder. The trial court imposed this enhanced sentence pursuant to the Illinois firearm enhancement statute, which provided for the imposition of an additional 25 years to a term of natural life in cases in which, during the commission of the underlying offense, the offender personally discharged a firearm that caused great bodily harm, permanent disability or disfigurement, or death. *See* 730 ILCS 5/5-8-1(a)(1)(d)(iii).

Petitioner filed a direct appeal, in which he raised the following issues:

1. That the State failed to prove him guilty of first degree murder beyond a reasonable doubt;

2. Ineffective assistance of trial counsel for:

    a. failing to file a motion to suppress James' pretrial identifications of petitioner as the shooter;

    b. failing to call police officer Hunter to prove up the impeachment of James as to his prior description of petitioner;

3

      c.      failing to call Melissa Phillips as a witness at trial; and

      d.      referring during closing argument to statements made by Phillips, despite the fact that she had not testified;

3. That his sentence was excessive;

4. That the Illinois firearm enhancement statute violates the Proportionate Penalties and Due Process Clauses of the Illinois Constitution; and

5. That the mittimus was incorrect.

On September 6, 2006, the Illinois Appellate Court affirmed petitioner's conviction and sentence, and instructed the clerk of the circuit court to correct the mittimus.

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court, in which he raised the following issues:

1. That the State failed to prove him guilty of first degree murder beyond a reasonable doubt;

2. Ineffective assistance of trial counsel for failing to file a motion to suppress James' identification of petitioner as the shooter;

3. That the Illinois firearm enhancement statute violates the Proportionate Penalties and Due Process Clauses of the Illinois Constitution; and

4. That the mittimus was incorrect.

The Illinois Supreme Court denied petitioner's petition for leave to appeal on March 28, 2007. *See People v. Nichols*, 865 N.E.2d 974 (Ill. 2007).

Petitioner then filed a *pro se* petition for post-conviction relief in the Circuit Court of Cook County that raised the following issues:

1. That his conviction for first degree murder violated his Fifth Amendment rights because he was not indicted on that offense;

2. That the police ignored his requests to contact an attorney;

3. That the State failed to respond to a discovery request;

4

4. Ineffective assistance of trial counsel for:

   a. failing to interview and call alibi witnesses James Miller and Patricia Nichols;

   b. failing to request a mistrial based on jury conduct and apparent jury deadlock;

   c. failing to investigate identification evidence;

   d. incorrectly advising petitioner regarding his right to testify, causing petitioner to waive that right;

   e. failing to call Officer Hunter to perfect the impeachment of a State witness; and

   f. failing to file a pretrial motion "to discredit [Leighty's] testimony" and to investigate and present evidence that would have shown that Leighty was lying; and

5. Ineffective assistance of appellate counsel for failing to raise the following issues on direct appeal:

   a. ineffective assistance of trial counsel for failing to interview and call alibi witnesses James Miller and Patricia Nichols;

   b. that his conviction for first degree murder violated his Fifth Amendment rights because he was not indicted on that offense;

   c. ineffective assistance of trial counsel for failing to request a mistrial based on jury conduct and apparent jury deadlock;

   d. that the State failed to meet its burden of proof at trial;

   e. ineffective assistance of trial counsel for failing to file a pretrial motion "to discredit [Leighty's] testimony" and to investigate and present evidence that would have shown that Leighty was lying; and

   f. the unconstitutionality of the firearm enhancement statute.

The Circuit Court of Cook County found that the issues presented in petitioner's post-conviction petition were frivolous and patently without merit, and dismissed the petition on February 8,

2008.

Petitioner appealed the dismissal of his post-conviction petition, and raised the following issues:

 1. Ineffective assistance of trial counsel for:

    a. failing to investigate and present evidence that Leighty was being forced to testify against petitioner and that she was lying about petitioner's involvement in the case;

    b. causing petitioner to involuntarily waive his right to testify; and

    c. failing to take action to protect the jury from coercion or duress when the jury appeared to be deadlocked; and

 2. Ineffective assistance of appellate counsel for failing to raise the issue of ineffective assistance of trial counsel, based on trial counsel's failure to take action to protect the jury from coercion or duress when the jury appeared to be deadlocked.

On May 4, 2010, the Illinois Appellate Court affirmed the dismissal of petitioner's post-conviction petition.

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court, in which he raised the same issues that he raised before the Illinois Appellate Court on appeal of the dismissal of his post-conviction petition. The Illinois Supreme Court denied this petition for leave to appeal on September 29, 2010.

Petitioner then filed his federal habeas petition, which this court received on March 25, 2011. Petitioner raises the following issues in his habeas petition:

 1. Grounds 1-4: that the State did not prove petitioner guilty of first degree murder beyond a reasonable doubt;

 2. Grounds 5-7: ineffective assistance of trial counsel for:

    a. failing to file a motion to suppress Sherman James' identification of petitioner;

6

        b.        failing to call Officer Hunter to prove up the impeachment of Sherman James;

        c.        failing to call Melissa Phillips as a witness at trial, and referring during closing argument to statements made by Melissa Phillips, despite the fact that she had not testified;

3.        Ground 8: that his sentence was excessive, based on the facts of the case and petitioner's criminal history; and

4.        Ground 9: that the Illinois firearm enhancement statute is unconstitutional because it violates:

        a.        the Proportionate Penalties Clause of the Illinois Constitution; and

        b.        the Equal Protection Clause of the United States Constitution.

## III.    Analysis

### A.    *Cognizability*

Respondent argues that petitioner's claim that the Illinois firearm enhancement statute violates the Illinois Constitution's Proportionate Penalties Clause is not cognizable on federal habeas review. Federal habeas review is limited to determining whether the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Court concludes that petitioner's claim that the Illinois firearm enhancement statute violates the Illinois Constitution's Proportionate Penalties Clause is not cognizable on federal habeas review. *See U.S. ex rel. Keller v. McCann*, 553 F. Supp. 2d 1002, 1012 (N.D. Ill. 2008).

### B.    *Procedural Default*

Respondent also argues that the Court may not reach the merits of several of petitioner's claims, or portions of claims, because they are procedurally defaulted. In order to avoid

procedural default, a "petitioner in federal court must first exhaust his state remedies by fairly presenting his claims through one full round of state-court review." *Gray v. Hardy*, 598 F.3d 324, 327 (7th Cir.), *cert. denied*, 131 S. Ct. 119 (2010) (citing 28 U.S.C. § 2254(b)(1)). This means that a habeas petitioner must raise an issue, either on direct appeal or in post-conviction proceedings, at each and every level in the state court system, including filing a petition for leave to appeal to the Illinois Supreme Court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). "Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim." *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009).

Petitioner did not argue in the state court proceedings that the Illinois firearm enhancement statute violates the Equal Protection Clause of the United States Constitution, and accordingly that claim is procedurally defaulted. In addition, the following grounds for petitioner's ineffective assistance of trial counsel claim are defaulted because petitioner did not raise these grounds through one full round of state-court review: that trial counsel was ineffective for failing to call Officer Hunter to prove up the impeachment of Sherman James (an issue distinct from the issue of counsel's failure to move to suppress James' identification of petitioner), failing to call Melissa Phillips as a witness at trial, and referring during closing argument to statements made by Phillips. *See Pole*, 570 F.3d at 935 ("if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted."). Finally, petitioner's claim that his sentence was excessive based on the facts of the case and his criminal history, which is distinct from his claim regarding the constitutionality of the firearm enhancement statute, is defaulted because he failed to raise it in his petition for leave to appeal to the Illinois Supreme Court on direct appeal.

8

A procedural default may be excused "if the petitioner can show both cause for and prejudice from the default, or show that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Gray*, 598 F.3d at 328. In this context, "cause" is "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (quoting *People v. Britt-El*, 794 N.E.2d 204, 209 (Ill. 2002)). "Prejudice" means "an error which so infected the entire trial that the resulting conviction violates due process." *Id*. In order to establish that a fundamental miscarriage of justice would result, a habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Petitioner does not argue that cause and prejudice excuse his failure to raise these claims through a full round of state court review, and therefore the Court need not consider them. *See Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002). Nor does petitioner suggest or offer anything to show that he was actually innocent. *See Buie v. McAdory*, 341 F.3d 623, 626 (7th Cir. 2003) ("A defendant who asserts actual innocence as a reason to excuse a procedural default must *demonstrate* innocence; the burden is his . . . ."). The Court concludes that petitioner's defaults are not excused.

### C. Waiver

Petitioner argues in his reply brief that his trial counsel was ineffective for failing to investigate and present evidence that would have shown that Leighty was forced to testify against petitioner, and that she lied about petitioner's involvement in the case. This claim is waived, because petitioner raised it for the first time in his habeas reply brief. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009).

9

Even if petitioner had not waived this claim, however, it was procedurally defaulted. Petitioner argues that trial counsel should have obtained and presented evidence that Leighty admitted in writing and on audiotape recordings that she was being forced to lie about petitioner being the shooter. Petitioner raised this claim in his post-conviction petition, but neither attached documentation from Leighty corroborating that she had falsely implicated him, nor explained the absence of such documentation. The Illinois Appellate Court affirmed the summary dismissal of this claim because petitioner failed to comply with a state procedural rule that requires a petitioner to attach to his post-conviction petition "affidavits, records, or other evidence supporting its allegations" or "state why the same are not attached." *See* 725 ILCS 5/122-2.

"When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). A state court decision rests on such independent and adequate state grounds when the state court "refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules." *Id*. Here, the state appellate court's decision that petitioner failed to comply with the procedures required by the Illinois Post-Conviction Hearing Act rested on an independent and adequate state law ground. Accordingly, even if it was not waived, this claim was procedurally defaulted.

### D. *Merits*

The Court turns to the merits of petitioner's remaining claims: that the State failed to prove him guilty of first degree murder beyond a reasonable doubt; and ineffective assistance of trial counsel, based on counsel's failure to file a motion to suppress Sherman James' identification. In addition to showing that he is in custody in violation of federal law, a habeas

petitioner must show "that his detention was the result of a state court decision (1) 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. § 2254(d)).

### 1. *Sufficiency of the Evidence*

Petitioner claims that the State failed to present sufficient evidence to prove him guilty beyond a reasonable doubt. Clearly established federal law "holds that due process is satisfied if, viewing the evidence in the light most favorable to the prosecution, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Petitioner observes that the prosecution did not present physical evidence such as the firearm used in the shooting, DNA, fingerprints, or footprints, and argues that the testimony of the two prosecution witnesses was insufficient to convict him. Petitioner argues that Sherman James' identification testimony was unreliable because the record is unclear as to James' opportunity to view the shooter, and because James' description of the shooter to police at the scene was vague and general. In addition, petitioner argues that Sarina Leighty was a vengeful ex-girlfriend, whose testimony was inconsistent and repeatedly impeached.

The appellate court considered the factors outlined in *Neil v. Biggers*, 409 U.S. 188 (1972) in its analysis of the reliability of James' identification: (1) the witness' opportunity to view the defendant during the offense; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the witness' level of certainty at the subsequent identification; and (5) the length of time between the crime and the identification. The appellate

court stated that James had an unobstructed view of the scene, which was well-illuminated, from a distance of one house and one vacant lot away. The court acknowledged that there was contradicting testimony regarding James' initial description of what the shooter was wearing. However, the court noted that James had generally described the shooter, and that James positively identified petitioner as the shooter in a photographic array ten days after the shooting, and in a lineup two days after that, a length of time that the appellate court found not to be significant. The appellate court was also unpersuaded by the fact that James did not immediately identify the petitioner at trial.

The record supports a conclusion that James had an adequate opportunity to view the shooter during the crime. In addition, the jury was alerted to weaknesses of James' testimony. When James identified petitioner in court, defense counsel asked that the record reflect that James "took approximately a minute looking around the courtroom before he pointed to the defendant," and reiterated this point in closing argument. Defense counsel also cross-examined James on his opportunity to view the shooter and regarding James' description of the shooter.

The identification of an individual by even a single credible eyewitness is sufficient to support a conviction. *See, e.g., U.S. ex rel. Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir. 1989). However, in this case James' identification was also corroborated by Leighty. Although petitioner argues that Leighty was not a credible witness, the jury was in the best position to assess her credibility, and the Court does not re-evaluate credibility determinations on federal habeas review. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

Viewing the evidence in the light most favorable to the prosecution, a trier of fact could have found that the prosecution had proven the elements of first degree murder beyond a reasonable doubt. This Court concludes that the Illinois Appellate Court's decision that a rational

jury could have convicted petitioner was not an unreasonable application of the legal standard outlined in *Jackson v. Virginia*. Therefore, petitioner's insufficiency of the evidence claim fails.

### 2. *Ineffective Assistance of Counsel*

Next, the Court considers petitioner's claim that his trial counsel provided ineffective assistance by failing to move to suppress James' pretrial identifications of him. *Strickland v. Washington* supplies the clearly established standard for finding ineffective assistance of counsel: (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's errors or omissions, there is a reasonable probability that the outcome of the trial would have been different. 466 U.S. 668, 688, 694 (1984). The Illinois Appellate Court correctly articulated this standard, and therefore the Court considers whether the appellate court's application of *Strickland* in this case was unreasonable.

In considering the first prong of the *Strickland* analysis, courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal citations omitted). An attorney's decision as to whether to file a motion to suppress a pretrial identification is such a strategic decision. *See Pittman v. Warden, Pontiac Correctional Ctr.*, 960 F.2d 688, 691 (7th Cir. 1992).

James identified petitioner twice prior to trial: once in a photo array on August 2, 2001, and again in a lineup on August 4, 2001. In a post-trial hearing, defense counsel testified that her decision not to move to suppress the photo array identification was a strategic one. She explained that she did not want the photo array suppressed because she wanted to be able to show it to the jury and argue that it was improperly suggestive. In addition, defense counsel testified that she

examined the lineup photographs and concluded that the lineup had been fair. She noted that the participants in the lineup had the same general complexion and height, and that the only individual in the lineup who had a different hairstyle was not petitioner. The appellate court concluded that counsel's decisions that petitioner alleges to have been erroneous were "strategic choices made after thorough investigation of the case," and that petitioner failed to show that he was prejudiced by these alleged errors.

The Court agrees that defense counsel's decision not to file a motion to suppress was a reasonable strategic decision that should not be second-guessed. Defense counsel could have reasonably concluded that she could effectively highlight the suggestiveness on the photo array in closing argument, which in fact she did at trial. Moreover, even if James' identifications had been suppressed, Leighty, who knew petitioner, also identified him as the shooter. Therefore, even if defense counsel's decision not to file a motion to suppress was erroneous, the Court cannot say that the result of the proceeding would have been different. The Court concludes that the appellate court reasonably applied the *Strickland* standard to the facts of this case. Petitioner's habeas petition is denied.

## IV.     *Certificate of Appealability*

Because the Court is entering an order adverse to petitioner, the Court must determine whether to grant him a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. A certificate of appealability should issued only if petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). That is, petitioner must show that "reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *See Miller-El*

*v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court finds that petitioner has not met this burden, and accordingly declines to certify any issues for appeal.

    **ORDERED:** The petition for writ of habeas corpus [1, 8] is denied. The Court declines to certify any issues for appeal. Case terminated.

                                                      ENTER:

                                                      George W. Lindberg
                                                      Senior United States District Judge

DATED:   September 30, 2011